Filed 9/14/22  Hunt v. Golden Sate Boring & Pipe Jacking CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BILLY HUNT, JR., et al., | |
| Plaintiffs and Respondents, | E076407 |
| v. | (Super.Ct.No. CIVDS1930939) |
| GOLDEN STATE BORING & PIPE JACKING, INC., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.

Affirmed.

Atkinson, Andelson, Loya, Ruud & Romo, Scott K. Dauscher, Jon M. Setoguchi and David Kang for Defendant and Appellant.

James Hawkins, APLC, James R. Hawkins, Samantha A. Smith and Lance E. Dacre for Plaintiffs and Respondents.

1

Plaintiffs Billy Hunt, Jr., and Thomas Ray, individually and on behalf of a putative class, sued their former employer, defendant and appellant Golden State Boring & Pipe Jacking, Inc. (GSB), for violations of various provisions of California's wage and hour laws. GSB moved to compel arbitration pursuant to the collective bargaining agreements (CBA) between it and the labor unions representing plaintiffs. The superior court granted the motion as to Ray but denied it as to Hunt on the ground the arbitration provisions in his CBAs were not "'explicit, clear and unmistakable.'" We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

Plaintiffs were union employees of GSB. Hunt's employment from January 1997 to August 2019 was subject to two different CBAs: Hunt's 2013 CBA (Ex. A) and Hunt's 2016 CBA (Ex. B). Ray's employment from October 2006 to August 2019 was subject to two different CBAs: Ray's 2015 CBA (Ex. C) and Ray's 2018 CBA (Ex. D).

On October 11, 2019, plaintiffs initiated this action seeking to represent a class comprising current and former nonexempt employees of GSB. By way of their second amended complaint, they assert six claims against GSB: (1) failure to pay overtime wages, (2) improper deductions from earned wages, (3) failure to provide accurate itemized wage statements, (4) failure to pay all wages within the required time and upon separation of employment, (5) violation of Business and Professions Code section 17200 et. seq., and (6) civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA).

On March 13, 2020, GSB moved to compel arbitration of plaintiffs' individual claims on the ground their grievances are covered by the arbitration provisions in their CBAs. GSB also sought to dismiss the class action claim on the ground the arbitration provisions in their CBAs do not permit collective actions.[1] The initial hearing on the motion was continued to allow supplemental briefing on, inter alia, whether the arbitration provisions in the CBAs "'clearly and unmistakably'" waive plaintiffs' right to bring these claims in a judicial forum.

GSB relied on section L, of article XVI, entitled, "Working Rules," in Hunt's 2013 CBA: "Sanitation, Safety and Rest Periods: [¶] 1. All approved Safety Orders of the California Division of Industrial Safety shall be observed by the Contractor and the employees: [¶] (a) *The parties to this agreement recognize Industrial Wage Order 16-2001 covering*, '*On Site Construction, Mining, Drilling, and Logging Industries.*' *Any dispute or grievance arising from the Wage Order shall be processed under and in accordance with Article V, Procedure for Settlement of Grievances and Disputes of this agreement.*"

The italicized language in article XVI, section L, subparagraph 1(a), is a verbatim wording of the waiver found to be sufficient to compel arbitration of claims arising under Industrial Welfare Commission wage order No. 16-2001 (wage order 16). (*Cortez v. Doty Bros. Equipment Co*. (2017) 15 Cal.App.5th 1, 7, 12 (*Cortez*).) However, the provision in

---

[1] The motion also sought to dismiss the PAGA claim since plaintiffs' employment is governed by qualifying CBAs (Lab. Code, § 2699.6); however, the parties agreed to defer this issue to a later time.

Hunt's 2013 CBA is found *only* under article XVI, section L, entitled, "Sanitation, Safety and Rest Periods." The provision references article V, which establishes a "Labor-Management Adjustment Board . . . for the express purpose of interpreting and enforcing all the terms and provisions contained [in the CBA]," to resolve disputes between the union and the employer. Article V, entitled, "Procedure for Settlement of Grievances and Disputes," in relevant part, provides: "A. *There is hereby established a Labor-Management Adjustment Board* consisting of the individuals who actually negotiated this Agreement. The establishment of this Board and the purposes of its existence is *for the express purpose of interpreting and enforcing all the terms and provisions contained herein*. No dispute, complaint or grievance shall be recognized unless called to the attention of the individual Contractor and the Union within thirty (30) days after the alleged violation occurred. [¶] . . . [¶] 2. *In the event the Labor-Management Adjustment Board does not reach a decision for reasons of its own, any dispute or grievance may be referred to arbitration by either or both parties*, and the cost of arbitration will be borne totally by the losing party. The appealing party shall notify the other party of their intent to arbitrate within fifteen (15) working days. [¶] . . . [¶] D. *The Arbitrator shall have no authority to make recommendations or decisions which would add to*, *alter*, *vary or modify any of the terms or provisions of this Agreement*. All decisions of the Arbitrator shall be based on the language of this Agreement and the intent of the Negotiating Committee. . . ." (Italics added.)

4

Hunt's 2016 CBA expands the arbitration provision in article XVI, section L, subparagraph 1(a), by adding the following (as relevant):  "It is the *intent* of the parties that *this grievance procedure provide a mechanism for resolving the individual claims* covered herein which balances expedited and complete relief to employees for violations with avoidance of unnecessary costs and disproportionate remedies associated with class and representative actions.  [¶]  Any dispute, complaint or grievance alleging a violation of the Master Labor Agreement shall be processed through the Procedure for Settlement of Grievance and Disputes in Article V, and the Union shall retain sole and exclusive ability to bring such a grievance to arbitration pursuant to such Article.  *In addition, any dispute*, *complaint or grievance concerning a violation of, or arising under, Industrial Welfare Commission Wage Order 16 ('Wage Order 16') which is subject to the Procedure for Settlement of Grievance and Disputes in Article V by operation of Wage Order 16 and exemptions contained therein for employees covered by collective bargaining agreements shall remain subject only to Article V and not this Article XVI*, *Section L.*  Disputes, complaints or grievances within the scope of this paragraph shall be referred to as 'Contractual Disputes.'  [¶]  *In addition to Contractual Disputes* that may be *brought by the Union* as described above, *all employee disputes concerning* violations of, or arising under Wage Order 16 (except as noted in the immediately preceding paragraph), the California Labor Code Sections identified in *California Labor Code Section 2699.5 as amended*, *the California Private Attorneys General Act* (*Labor Code Section 2698, et. seq.*), *and federal*, *state and local law concerning wage-hour requirements*, *wage payment and meal or rest periods*, *including claims arising under the*

5

*Fair Labor Standards Act (hereinafter 'Statutory Dispute' or 'Statutory Disputes') shall be subject to and must be processed by the employee pursuant to the procedures set forth in this Article XVI, Section L as the sole and exclusive remedy.* To ensure disputes are subject to this grievance procedure in accordance with the intended scope of coverage set forth herein, *Statutory Disputes also include any contract, tort or common law claim concerning the matters addressed in the foregoing laws* (*other than a claim of violation of the Master Labor Agreement which are deemed Contractual Disputes*). This Article XVI, Section L shall not apply to claims before the National Labor Relations Board, the Employee Equal Opportunity Commission, the Department of Fair Employment and Housing, and the California Division of Workers' Compensation. [¶] . . . [¶] If the individual employee dispute is a Statutory Dispute subject to this Article XVI, Section L, the grievance shall not be heard by the Labor-Management Adjustment Board, but shall proceed directly to an independent Arbitrator. . . ." (Italics added.)

In both of Hunt's CBAs, the remaining subparagraphs of article XVI, section L, address various sanitation and safety issues, including safety gear (subparagraph 2), safety measures and practices (subparagraph 3), providing heaters when the outside temperature is below 40 degrees Fahrenheit (subparagraph 4), air-conditioned cabs (subparagraph 5), and drinking water (subparagraph 6). Section L also addresses rest period guidelines (subparagraphs 7 & 8) and reinstatement of an employee who was unjustifiably disciplined (subparagraph 9). Neither of Hunt's CBAs has a table of contents or appendix.

6

In contrast, Ray's CBAs contain a table of contents setting forth the various sections, and appendix C entitled, "Grievance of Disputes." Within appendix C are two subsections: "A. Arbitration of Employment Related Claims," and "B. Procedure for Arbitration of Disputes." Similar to Hunt's CBAs, Ray's CBAs contain an arbitration provision embedded in article XVI, entitled, "Holidays, Payment of Wages, Meal Periods, Rest Periods (Breaks), & Heat Illness Preventative Recovery Period." That provision provides: "D. Breaks (Rest Periods) [¶] The parties to this Agreement recognize Industrial Wage Order 16 covering, 'On Site Construction, Mining, Drilling, and Logging Industries.' *Any dispute or grievance arising from the Wage Order shall be processed under and in accordance with Article VI, Procedures for Settlement of Grievances and Disputes of this Agreement. The grievance process of Article VI shall be the exclusive method for resolving all alleged violations on this Wage Order and the time limitations of Article VI shall apply.* [¶] Wherever the Wage Order refers to collective bargaining agreements, this Master Labor Agreement shall be deemed to satisfy all of the requirements for treatment as a qualified collective bargaining agreement." (Italics added.)

Although placed under the section dealing with breaks/rest periods, there is no reference to breaks/rest periods. The remaining sections of article XVI address holidays (§ A), payment of wages (§ B), a meal period (§ C), and a heat illness preventative recovery period (§ E). However, the final section, (§ F), is untitled and contains language not found in either of Hunt's CBAs. It provides: "F. *All disputes concerning the payment of wages, meals, rest periods (breaks) and/or heart illness preventative recovery*

7

*periods are subject to the Procedure for Settlement of Grievance and Disputes in Article VI and as outlined in Appendix C of the Agreement.* Decisions resolving disputes arising out of the Procedure for Settlement of Grievance and Disputes shall be final and binding upon both parties." (Italics added.)

On November 13, 2020, the superior court granted GSB's motion as to Ray (only as to his individual claims), but denied it as to Hunt on the grounds the arbitration provisions in his CBAs were not "'explicit, clear, and unmistakable.'" Acknowledging that the language in article XVI, section L, subparagraph 1(a), is a verbatim wording of the waiver found to be explicit, clear, and unmistakable in *Cortez*, the court distinguished the case based on the waiver's placement under article XVI, section L, entitled, "Sanitation, Safety and Rest Periods." According to the court, Hunt was not suing for "rest period violations or for any cause of action related to sanitation or safety." Also, the court observed that the limitation in article V "undermines any interpretation that claims under Wage Order 16 and the Labor Code (as opposed to claims under the CBA) can be addressed under the procedures set forth in Article V [it found that r]ead in totality, a more reasonable interpretation of Article V is that it addresses disputes brought by the *union*."

GSB appeals.

II.  DISCUSSION

GSB contends the superior court erred in denying the motion to compel arbitration as to Hunt's claims because it incorrectly applied the case law defining an "'explicit, clear, and unmistakable'" waiver of a judicial forum in an arbitration agreement and wrongly considered the headings in Hunt's CBAs to be dispositive.  We find no error.

A.     *Standard of review.*

"A petition to compel arbitration should be granted if the court determines that an agreement to arbitrate the controversy exists.  [Citation.]  Fundamental to this inquiry is whether the parties have agreed to arbitrate their dispute.  [Citations.]  [¶] . . . [¶]  We apply de novo review to the trial court's interpretation of an arbitration agreement that does not involve conflicting extrinsic evidence."  (*Cortez*, *supra*, 15 Cal.App.5th at p. 12.)

B.     *Analysis.*

"A union representative may agree on an employee's behalf as part of the collective bargaining process to require the employee to arbitrate controversies relating to an interpretation or enforcement of a CBA.  [Citations.]  In fact, when a CBA includes an arbitration provision, *contractual* matters under a CBA are presumed arbitrable; that is, arbitration must be granted as long as the CBA is reasonably susceptible to an interpretation in favor of arbitration."  (*Cortez*, *supra*, 15 Cal.App.5th at pp. 11-12, italics added.)  "However, the presumption of arbitration in a CBA does not apply to *statutory* violations."  (*Id.* at p. 12, italics added.)  Rather, "a CBA *may* require arbitration of a *statutory* claim if, in a waiver that is '*explicitly stated*,' it is 'clear and unmistakable' that the parties intended to waive a judicial forum for statutory claims."  (*Vasserman v. Henry*

9

*Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, 245,[2] italics added; see

*Wright v. Universal Maritime Service Corp. et al.* (1998) 525 U.S. 70, 80; *Vasquez v.*

*Superior Court* (2000) 80 Cal.App.4th 430, 434 (*Vasquez*).)  Thus, unless there is

"""clear and unmistakable evidence""" the parties to a CBA have agreed to arbitrate, the

court must not assume such agreement.  (*Wilson-Davis v. SSP America*, *Inc.* (2021)

62 Cal.App.5th 1080, 1088-1090 (*Wilson-Davis*).)

Applying the above case law, the superior court considered "whether [the]

arbitration provisions in the four CBAs are 'explicit, clear, and unmistakable.'"  It rejected

GSB's argument that since the CBAs used "verbatim wording of the waiver at issue in

*Cortez*,"[3] Hunt's claims are subject to arbitration.  Regarding Hunt's 2013 CBA, the court

explained that the arbitration provision was placed under article XVI, section L, entitled,

"Sanitation, Safety, and Rest Periods"; however, Hunt was not suing for rest period

---

[2] Although *Vasserman v. Henry Mayo Newhall Memorial Hospital*, *supra*, 8 Cal.App.5th 236 acknowledged case law that holds unions may not waive an individual's statutory rights to a judicial forum, the Court of Appeal chose not to decide this issue; instead, it analyzed the facts of the case under the "clear-and-unmistakable standard." (*Vasserman*, at p. 245.)

[3] *Cortez* did not find all plaintiff's claims to be covered by the terms of the arbitration provision in the CBA. (*Cortez*, *supra*, 15 Cal.App.5th at p. 15.)  Rather, it concluded that only the claims arising under Wage Order 16—"claims under the Labor Code for overtime, meal and rest breaks and violation of record-keeping provisions"— were covered. (*Ibid*.)  Regarding Cortez's causes of action for timely payments upon separation of employment and his unfair competition claim based on that statutory violation, the Court of Appeal held that the CBA did not compel arbitration of these claims because they did not "fall within the wage order." (*Ibid*.)  Thus, under *Cortez*, the trial court properly denied arbitration of Hunt's claims for failure to pay all wages within the required time and upon separation of employment, and violation of Business and Professions Code section 17200 et. seq.

violations or for any cause of action related to sanitation or safety. Moreover, the court found that article XVI's mandate that any disputes or grievances arising from Wage Order 16 be processed under article V was undone by article V, section D, which divests the arbitrator of any authority to "add to, alter, vary or modify any of the terms or provisions of this Agreement. *All Decisions shall be based on the language of this Agreement and the intent of the Negotiating Committee*." According to the court, "[t]his limitation undermines any interpretation that claims under Wage Order 16 and the Labor Code (as opposed to claims under the CBA) can be addressed under the procedures set forth in Article V. . . . Read in totality, a more reasonable interpretation of Article V is that it addresses disputes brought by the *union*."

We agree. The reference to article V does not clarify the issue regarding arbitration because article V establishes a "Labor-Management Adjustment Board" (the board) to interpret and enforce the provisions in the Hunt's 2013 CBA and provides that any "dispute or grievance" arising therefrom "*may* be referred to arbitration." (Italics added.) By its language, article V, section A, addresses disputes or grievances between GSB and the union representative on behalf of any employees which involve interpretation or enforcement of the CBAs. Section B, subparagraphs 2 through 5, prescribe the following steps: (1) a discussion between the union representative and the authorized representative of GSB; (2) a meeting between the union representative, GSB, and the labor relations representative of the employee's association (Engineering Contractors Association, Inc.); (3) referral of the dispute or grievance to the board for consideration and decision; and (4) decision by the joint chairmen of the board or

11

arbitrator. Thus, while article V, section A, subparagraph 2, sets out an arbitration procedure, it does not mandate arbitration: "In the event the Labor-Management Adjustment Board does not reach a decision for reasons of its own, any dispute or grievance *may* be referred to arbitration by either or both parties." Moreover, it limits the arbitrator's power. (See art. V, § D.)

Turning to Hunt's 2016 CBA, the superior court noted that it contained "important additions, perhaps intended to cure the problems with the early CBA." Specifically, the following paragraph was added to article XVI, section L, subparagraph 1(a): "Any dispute, complaint or grievance alleging a violation of the Master Labor Agreement shall be processed through the Procedure for Settlement of Grievance and Disputes in Article V, and the Union shall retain sole and exclusive ability to bring such a grievance to arbitration pursuant to such Article. *In addition, any dispute*, *complaint or grievance concerning a violation of, or arising under, Industrial Welfare Commission Wage Order 16 ('Wage Order 16') which is subject to the Procedure for Settlement of Grievance and Disputes in Article V by operation of Wage Order 16 and exemptions contained therein for employees covered by collective bargaining agreements shall remain subject only to Article V and not this Article XVI, Section L.* Disputes, complaints or grievances within the scope of this paragraph shall be referred to as 'Contractual Disputes.'" (Italics added.)

The court found that the first sentence in the above paragraph suggests that the entire paragraph is directed only to disputes, complaints, or grievances "brought by the *union*." But, "if the second sentence is viewed in isolation, it might appear to be an

12

attempt to eliminate the problem in [Hunt's 2013 CBA] that the arbitration provision relates only to claims concerning 'Sanitation, Safety, and Rest Periods.'"  Nonetheless, the superior court looked to the next paragraph in article XVI, section L, subparagraph 1(a), and found that it "dispel[ed] any such notion."  That paragraph provides:  "*In addition to Contractual Disputes that may be brought by the Union as described above, all employee disputes concerning violations of, or arising under Wage Order 16 (except as noted in the immediately preceding paragraph), the California Labor Code Sections identified in California Labor Code Section 2699.5 as amended, the California Private Attorneys General Act (Labor Code Section 2698, et. seq.), and federal, state and local law concerning wage-hour requirements, wage payment and meal or rest periods, including claims arising under the Fair Labor Standards Act (hereinafter 'Statutory Dispute' or 'Statutory Disputes') shall be subject to and must be processed by the employee pursuant to the procedures set forth in this Article XVI, Section L as the sole and exclusive remedy. . . .*"

The court observed, "At first glance, this paragraph might appear to contradict the immediately preceding paragraph:  The *first* paragraph says that disputes concerning violations of Wage Order 16 are subject only to Article V (and not Article XVI, Section L), while the *second* paragraph says that employee disputes concerning violations of Wage Order 16 (and other statutory disputes) must be processed by the employee pursuant to the procedures set forth in Article XVI, Section L.  The limitation in the second paragraph to *employee* disputes resolves any conflict.  The only reasonable interpretation of these two provisions is that disputes brought by the *union* are to be

processed under Article V, while disputes brought by *employees* are to be processed under Article XVI." The Hunt 2016 CBA further adds that if the employee dispute is statutory it shall proceed to an arbitrator, not the board. However, the court found that, even if the additional language in Hunt's 2016 CBA was intended to cure any deficiencies in Hunt's 2013 CBA, by placing it under article XVI, section L, entitled, "Sanitation, Safety, and Rest Periods," the "implication is that arbitration is required for employee disputes relating to *those* topics" only.

Again, we agree with the superior court. The additional language in Hunt's 2016 CBA—which may be interpreted as requiring arbitration of employees' statutory claims—is *hidden in the middle of the paragraph that begins by addressing disputes*, *complaints*, *or grievances brought by the union*, and remains under article XVI, section L, concerning sanitation, safety, and rest periods. By burying the arbitration provision within article XVI, section L, the implication is that arbitration is required for those types of claims and not others such as the ones raised in this lawsuit.

Nonetheless, GSB contends that the "**test is not whether the arbitration clause is self-contained, clearly titled, or uses specific phrases**; '[t]he test is whether a collective bargaining agreement makes compliance with the statute a contractual commitment subject to the arbitration clause.'" In support of this contention, GSB cites *Vasquez*, *supra*, 80 Cal.App.4th at p. 434 and *Wilson-Davis*, *supra*, 62 Cal.App.5th at p. 1094. However, these cases state that "'"[b]road, general language is not sufficient to meet the level of clarity required to effect a waiver in a [collective bargaining agreement]. In the collective bargaining context, the parties 'must be particularly clear' about their intent to

14

arbitrate statutory . . . claims." [Citation.] A waiver in a collective bargaining agreement is sufficiently clear if it is found in an explicit arbitration clause. "Under this approach, the [collective bargaining agreement] must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment.""" (*Wilson-Davis*, *supra*, 62 Cal.App.5th at p. 1094, quoting *Vasquez*, *supra*, 80 Cal.App.4th at pp. 435-436.) The burial of the arbitration provision under article XVI, section L, entitled, "Sanitation, Safety and Rest Periods," in the middle of a paragraph that begins by addressing disputes, complaints, or grievances brought by the union, does not "meet the level of clarity" contemplated by the words, "'explicit arbitration clause,'" used in *Vasquez* and *Wilson-Davis*.

Alternatively, GSB argues that the language in Hunt's 2016 CBA is sufficient to satisfy the *Vasquez* court's second method of establishing the requisite degree of clarity. According to *Vasquez,* "[a] waiver in a collective bargaining agreement *may* also be sufficiently clear if broad, nonspecific language in the arbitration clause is coupled with 'an "explicit incorporation of statutory antidiscrimination requirements" elsewhere in the contract.'" (*Vasquez*, *supra*, 80 Cal.App.4th at p. 435, italics added.) Assuming the broad, nonspecific language in Hunt's 2016 CBA is sufficient to support a valid arbitration provision, its placement under article XVI, section L, concerning sanitation, safety, and rest periods, implies an intent to limit arbitration to those types of claims and not others such as the ones raised in this lawsuit.

15

Contrary to GSB's assertion, the labeling and placement of an arbitration provision is relevant and important when assessing whether the language in a CBA clearly states the parties' intent to arbitrate statutory claims. After examining Hunt's 2013 CBA and Hunt's 2016 CBA, we conclude that neither clearly and unmistakably mandates arbitration of his claims.

## III. DISPOSITION

The order denying the motion to compel arbitration is affirmed. Respondent is awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


CODRINGTON
J.


RAPHAEL
J.

16