Filed 2/7/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TANYA VASSERMAN, | B267975 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC549185) |
| v. | |
| HENRY MAYO NEWHALL MEMORIAL HOSPITAL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jane L. Johnson, Judge.  Affirmed.

Epstein Becker & Green, Michael S. Kun and Kevin D. Sullivan for Defendant and Appellant.

Law Office of Joseph Antonelli, Joseph Antonelli and Janelle C. Carney for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff Tanya Vasserman sued her former employer, Henry Mayo Newhall Memorial Hospital (the Hospital) for violations of the California Labor Code and other statutes relating to meal and rest breaks, unpaid wages, and unpaid overtime compensation. The Hospital argued that the collective bargaining agreement relevant to Vasserman's employment required her to arbitrate her claims. The trial court denied the Hospital's motion to compel arbitration, and the Hospital appealed.

We affirm. The dispute before us is not over Vasserman's substantive rights, but instead the forum in which those rights are to be determined. If those rights are to be determined only by arbitration, a collective bargaining agreement must make that clear. The collective bargaining agreement here required arbitration of claims arising under the agreement, but it did not include an explicitly stated, clear and unmistakable waiver of the right to a judicial forum for claims based on statute. The trial court therefore correctly denied the Hospital's motion to compel arbitration.

## BACKGROUND

### A.    Factual background

Vasserman worked as a registered nurse at the Hospital from March 10, 2014 to April 3, 2014. The Hospital contends that Vasserman's employment was controlled by a collective bargaining agreement (CBA) between the California Nurses Association (CNA) and the Hospital (the CNA CBA).

Article 12 of the CNA CBA is titled "Grievance and Arbitration." It states, "For the purpose of this Agreement, a grievance is defined as any complaint or dispute arising out of the

2

interpretation or application of a specific Article and Section of this Agreement during the term of this Agreement or extensions thereof as to events or incidents arising only at the Hospital. No grievance as defined above shall be considered under the grievance procedure unless it is presented as provided in this Article." Article 12 describes a three-step grievance procedure that must be initiated within 10 days of the occurrence giving rise to the grievance. First, the nurse must present the grievance in writing to his or her immediate supervisor and send a copy to the director of human resources. The grievance "shall identify the Article(s) and Section(s) of the Agreement at issue." The supervisor will hold a meeting with the nurse within 10 days. If the grievance is not resolved at the first step, step two requires a non-employee CNA representative to forward the grievance to the director of human resources. The director of human resources will hold a meeting with the CNA representative and/or the nurse within 10 days. If the grievance is not solved in step two, step three requires the CNA or the Hospital to "file the grievance for binding arbitration with and pursuant to the rules of the Federal Mediation and Conciliation Service." "The jurisdiction of the arbitrator shall not exceed those subjects indentified herein in the original Step One grievance document." In addition, "[t]he arbitrator . . . shall be without authority to decide matters specifically excluded or not included in this Agreement."

Article 14 is titled "Compensation." The overtime section of Article 14 states that nurses are entitled to receive overtime pay based on a formula that depends on whether they are assigned to work 8, 10, or 12 hours in a day. Article 14 does not reference the grievance procedure or any statutes, and it does not include any discussion of remedies for violations.

Article 15 of the CNA CBA discusses meal and rest periods. It states, "The Hospital will comply with the applicable Industrial Welfare Commission Wage Order regarding meal periods, meal period 'waivers,' missed meal period penalties, and 'on-duty' meal period agreements." If a nurse's "right to a meal or rest period is interfered with," within 24 hours "he/she must provide his/her supervisor with a written explanation as to why the meal or rest period was missed." Article 15 also states, "A Nurse shall be provided a penalty equal to one hour of his/her base pay for any day which his/her right to the appropriate meal and/or rest period(s) are interfered with. A Nurse shall receive any and all penalties provided for under this Article, the Labor Code or the Wage Order no later than the pay period immediately following the day resulting in the penalties. If a Nurse fails to receive any penalty called for by this article, the Labor Code, or the Wage Order the Nurse may file a Grievance pursuant to Article 12. . . ."

Vasserman did not allege that she filed any grievances for alleged violations of the CNA CBA during her employment at the Hospital.

B.    **Procedural background**

Vasserman filed a class action complaint on June 18, 2014. She asserted statutory claims on behalf of herself and five putative classes of plaintiffs. She alleged that hourly employees, without valid Labor Code exemptions, were required to work shifts that exceeded eight hours per day and in excess of 80 hours per pay period, and the Hospital failed to pay required overtime wages for this work. Vasserman also alleged that the Hospital did not provide required meal breaks, required workers to work during meal breaks, and did not provide pay for missed meal breaks in violation of the Labor Code. She further alleged that

4

the Hospital did not provide itemized wage statements, and inappropriately calculated wages through a "rounding policy" in which calculations for time worked were rounded downward, resulting in the Hospital's failure to pay employees for actual time worked.

Vasserman asserted seven causes of action, styled as follows: (1) violation of Business and Professions Code section 17200, et seq.; (2) violation of Labor Code sections 204, 510, 1194, and 1198; (3) violation of Labor Code section 200, et seq.; (4) inaccurate wage statements under Labor Code section 226; (5) failure to provide meal periods; (6) a claim under Labor Code sections 2698 and 2699, as a private attorney general (PAGA); and (7) failure to pay wages in violation of Labor Code sections 510, 1198, and 1199. Vasserman requested injunctive relief, restitution, monetary damages, attorney fees, and civil penalties.

The Hospital removed the case to federal court, asserting that the case involved a federal question. (See 28 U.S.C. §§ 1331, 1441(b).) The Hospital argued that federal courts have original jurisdiction over claims relating to violations of CBAs, because in such cases state law is preempted by section 301(a) of the federal Labor Management Relations Act (LMRA).[1] The Hospital also contended that the federal court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA).

Vasserman moved to remand the case, and the United States District Court for the Central District of California

---

[1] "Title 29 United States Code section 185(a) codifies section 301(a) of the Labor Management Relations Act. (Pub.L. No. 101 (June 23, 1947) 61 Stat. 156.) Courts typically refer to the statutory provisions at issue as section 301(a) rather than by citation to the United States Code." (*Knutsson v. KTLA, LLC* (2014) 228 Cal.App.4th 1118, 1126.)

5

granted the motion. In a lengthy decision, the district court held that Vasserman's claims were not preempted by the LMRA: "[T]he court concludes that Vasserman has alleged claims that arise under state law, rather than the CBAs that governed her employment and that of putative class members, and that resolution of her claims will not substantially depend on interpretation of those agreements. Accordingly, the court lacks federal question jurisdiction." (*Vasserman v. Henry Mayo Newhall Memorial Hosp*. (C.D. Cal. 2014) 65 F.Supp.3d 932, 966.) The district court also held that the Hospital "ha[d] not carried its burden of proof regarding subject matter jurisdiction under CAFA," and therefore the court declined to exercise jurisdiction on that basis. (*Id*. at p. 984.) The district court remanded the case to the superior court.

Vasserman filed a first amended complaint on May 26, 2015. The amended complaint repeated the allegations from the original complaint, and added new putative classes and subclasses of plaintiffs. The amended complaint included a new cause of action for failure to provide required rest periods. Vasserman also added allegations that employees were required to perform unpaid work before their hiring date, including completing paperwork and attending a pre-hire physical examination. The seven causes of action in the first amended complaint were as follows: (1) violation of Business and Professions Code section 17200, et seq.; (2) violation of Labor Code sections 204, 510, 1194, and 1198; (3) violation of Labor Code section 200, et seq.; (4) inaccurate wage statements under Labor Code section 226; (5) failure to provide meal periods; (6) failure to provide rest periods; and (7) a PAGA claim under Labor Code sections 2698 and 2699. Again Vasserman sought

6

injunctive relief, restitution, monetary damages, attorney fees, and civil penalties.

The Hospital moved to stay the case and compel arbitration.[2] It argued that Vasserman and those she sought to represent as class members were represented by two different unions, the CNA and the United Electrical, Radio & Machine Workers of America. The workers were covered by four different CBAs, each of which included mandatory grievance and arbitration provisions. The Hospital cited *14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247 (*14 Penn Plaza*), arguing that as long as an agreement to arbitrate statutory claims is "explicitly stated" in the CBA, arbitration is required. The Hospital argued that the CBAs at issue included mandatory grievance and arbitration provisions relating to payment of overtime and meal and rest periods, and therefore "[t]he CNA CBA governing Plaintiff's employment clearly and unmistakably requires arbitration of the claims she has brought." With its motion, the Hospital submitted copies of each of the four CBAs applicable to putative class members.

Vasserman opposed the motion. She argued that the CBAs relevant to putative class members should not be considered, because questions regarding the scope of the class would be addressed in class certification proceedings. Vasserman also argued that the CNA CBA did not include a clear and unmistakable waiver of statutory rights because it made no reference to the statutes identified in the complaint, and it

---

[2] The Hospital also filed a demurrer to the complaint, which the court overruled. The demurrer is not at issue on appeal.

limited the arbitrator's authority to deciding only issues relating to the CNA CBA.

In its reply, the Hospital argued that references to the Labor Code within various portions of the CNA CBA were sufficient to constitute a clear and unmistakable waiver of statutory claims. The Hospital noted that Article 15 of the CNA CBA regarding meal periods specifically referenced Article 12's grievance and arbitration procedure. The Hospital also argued that Vasserman's "claim for overtime does not arise out of the Labor Code; rather, it arises out of the terms of the CBA" and therefore no reference to a code section was required to render those claims arbitrable. The Hospital contended that Vasserman's additional claims, such as her wage statement and PAGA causes of action, were derivative and also must be arbitrated. The Hospital also argued that the claims of the putative class members should also be held subject to mandatory arbitration.

Following a hearing, the trial court issued a written ruling denying the Hospital's motion to compel arbitration. The court cited *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434 (*Vasquez*), which held that to determine whether a waiver of statutory claims in a CBA is sufficiently explicit, "the courts look to the generality of the arbitration clause, explicit incorporation of statutory . . . requirements, and the inclusion of specific . . . provisions." The trial court stated, "None of those indicia of waiver is present here. While it does not appear to be necessary to include references to specific Labor Codes to enforce a CBA arbitration provision, more specificity is required to constitute a 'clear and unmistakable' waiver than the vague 'any claim or dispute' language found in Defendant's CBA arbitration

8

provision." The court also noted that the district court held that the CNA CBA did not include a clear and unmistakable waiver, and stated that although the district court's opinion was not controlling, its reasoning was persuasive.

The Hospital timely appealed.

## ANALYSIS

### A. Governing principles

A petition to compel arbitration should be granted "if [the court] determines that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2.) When presented with a petition to compel arbitration, the trial court's first task is to determine whether the parties have agreed to arbitrate the dispute. (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505; *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.) We review an order denying a petition to compel arbitration for abuse of discretion unless a pure question of law is presented, in which case we review the order de novo. (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1056-1057.) "[W]e apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute." (*Avery, supra*, 218 Cal.App.4th at p. 60.)[3]

---

[3] The Hospital argues that "[b]ecause the arbitration at issue would arise from a CBA in interstate commerce, the validity of any of its procedures is governed by federal law under section 301 of the Labor Management Relations Act (LMRA)." Even if we were to assume that interstate commerce were implicated in a case involving state statutory employment claims against a local employer, nothing in this appeal involves "the validity of any of [the] procedures" under the CNA CBA. Instead, the question before us is whether the parties agreed to arbitrate

9

California courts have held that "a union may not prospectively waive an employee's right to a judicial forum to hear his or her statutory discrimination claims." (*Torrez v. Consolidated Freightways Corp.* (1997) 58 Cal.App.4th 1247, 1259 (*Torrez*); see also *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 49 (*Deschene*) [that the plaintiff signed a CBA "along with other union members does not compel the inference that he personally was agreeing to arbitrate any state law claims he personally might have against his employer."].) As the *Torrez* court explained, "In a collective bargaining agreement, the rights at issue are those within the confines of the agreement itself, i.e., they are contractual. Although an individual employment contract can address both contractual and statutory rights, a collective bargaining agreement, by its very nature, may address only the common, contractual rights of the members of the bargaining unit." (*Torrez*, 58 Cal.App.4th at p. 1258.) Neither party addresses this precedent in their briefs.

Instead, the parties focus on the line of cases including *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 (*Wright*) and *Vasquez, supra,* 80 Cal.App.4th 430. Under the *Wright/Vasquez* standard, a CBA may require arbitration of a statutory claim if, in a waiver that is "explicitly stated," it is "clear and unmistakable" that the parties intended to waive a judicial forum for statutory claims. (See *Wright, supra,* 525 U.S. at p. 80; *Vasquez, supra,* 80 Cal.App.4th at p. 434; *Flores v. Axxis*

---

Vasserman's statutory claims. We need not consider the federal LMRA in answering this question. As the Ninth Circuit has stated, "a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption." (*Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F.3d 683, 692.)

*Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 806 (*Flores*).)

The *Vasquez* court noted that *Torrez* and *Deschene* held that unions could not waive individuals' statutory rights to a judicial forum. After so noting, the court analyzed the CBA under the standard articulated in *Wright* and found that no waiver occurred. (*Vasquez, supra*, 80 Cal.App.4th at pp. 433-434.) We, like the *Vasquez* court, analyze the facts of this case under the clear-and-unmistakable standard without deciding whether a union may waive an individual's statutory rights under the circumstances presented here.

In a case involving alleged statutory violations, the presumption of arbitrability that typically applies to contractual disputes arising out of a CBA is not applicable. (*Vasquez, supra,* 80 Cal.App.4th at p. 434.) As the United States Supreme Court explained in *Wright*, cases involving statutory claims "ultimately concern[ ] not the application or interpretation of any CBA, but the meaning of a . . . statute" and rights "distinct from any right conferred by the collective-bargaining agreement." (*Wright*, 525 U.S. at pp. 78-79.) In other words, a plaintiff such as Vasserman asserts rights conferred to her and all workers under California law, regardless of whether the employment occurred under the terms of a CBA. Therefore, when a plaintiff has alleged statutory violations, the "ultimate question" is "not what the parties have agreed to, but what [applicable] law requires; and that is not a question which should be presumed to be included within the arbitration requirement." (*Id.* at p. 79.)

"Not only is [a plaintiff's] statutory claim not subject to a presumption of arbitrability . . . any CBA requirement to arbitrate it must be particularly clear." (*Wright, supra*, 525 U.S.

11

at p. 79.) This is required because the "right to a . . . judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." (*Id*. at p. 80.) In order for a waiver to be valid, therefore, a CBA must "contain a clear and unmistakable waiver of the covered employees' rights to a judicial forum" relating to the statutory claims alleged in the complaint. (*Id*. at p. 82.)[4]

---

[4] Although the Hospital agrees that the clear and unmistakable standard applies here, it nonetheless argues that cases involving individual employment contracts are just as controlling as those involving CBAs. It cites *14 Penn Plaza, supra,* 556 U.S. at p. 258, in which the Supreme Court stated, "Nothing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." Read in context, it is unclear whether "the law" the Court referenced in that quote was the Age Discrimination in Employment Act of 1967 or more generally applicable contract or arbitration law. Nonetheless, *14 Penn Plaza* involved federal law and is not controlling here. The Court in *Wright* clearly distinguished CBAs from individual employment agreements. (See *Wright*, 525 U.S. at pp. 80-81 [the "clear and unmistakable" standard was not applicable in a case involving "an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees"].) *Vasquez* found the reasoning in *Wright* persuasive, and California courts have since maintained a distinction between individual employment contracts and CBAs. (See, e.g., *Torrez, supra,* 58 Cal.App.4th at p. 1259; *Deschene, supra,* 76 Cal.App.4th at pp. 46-49; *Vasquez, supra,* 80 Cal.App.4th at pp. 433-436; *Flores, supra,* 173 Cal.App.4th at pp. 805-811.) We therefore do not rely on cases involving individual employment contracts in considering whether the clear-and-unmistakable standard has been met here.

*Vasquez* followed *Wright*'s lead in interpreting a waiver of a judicial forum for statutory rights in a CBA, relying on the clear and unmistakable standard and requiring a union-negotiated waiver of a judicial forum to be explicitly stated. (*Vasquez, supra*, 80 Cal.App.4th at p. 434.) *Vasquez* held that in determining whether there has been a sufficiently explicit waiver, courts look to the generality of the arbitration clause, explicit incorporation of statutory requirements, and the inclusion of specific contractual provisions. (*Vasquez, supra*, 80 Cal.App.4th at p. 434.) "The test is whether a collective bargaining agreement makes compliance with the statute a contractual commitment subject to the arbitration clause." (*Ibid.*) Other California cases have applied the *Wright/Vasquez* clear-and-unmistakable standard. (See, e.g., *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 543-545 (*Mendez*); *Flores, supra,* 173 Cal.App.4th at pp. 805-807; *Choate v. Celite Corporation* (2013) 215 Cal.App.4th 1460, 1465 (*Choate*).)

## B.    The CNA CBA

The Hospital argues that "[b]ecause Plaintiff's claims all fall within the mandatory dispute resolution provisions of the CNA CBA that governed her brief employment, she was required to grieve and arbitrate them." The question here, however, is not whether the CNA CBA includes an arbitration agreement that pertains to Vasserman's employment; it undisputedly does. Instead, the question is whether the CNA CBA includes an explicitly stated, clear and unmistakable intent to waive the right to a judicial forum for the statutory causes of action Vasserman has alleged. We find that it does not.

The *Vasquez* court said a "waiver in a collective bargaining agreement is sufficiently clear if it is found in an explicit

13

arbitration clause. 'Under this approach, the [collective bargaining agreement] must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment.' [Citation.]" (*Vasquez, supra*, 80 Cal.App.4th at p. 435.)

Article 12 of the CNA CBA contains the grievance and arbitration agreement. Article 12 defines a grievance as "any complaint or dispute arising out of the interpretation or application of a specific Article and Section of this Agreement." It describes the three-step procedure, including step three in which any unresolved grievance may be submitted to arbitration. Article 12 limits the power of the arbitrator such that the arbitrator "shall be without authority to decide matters specifically excluded or not included in this Agreement." Article 12 does not include any reference to the California Labor Code or any other state or federal statutes. It does not include any agreement to submit statutory causes of action to arbitration.

Article 12 cannot be reasonably read to include an explicitly stated, clear and unmistakable waiver of a judicial forum for employees' statutory claims. In *Wright*, the Court considered a similar provision, in which the CBA "arbitration clause [was] very general, providing for arbitration of '[m]atters under dispute,' . . . which could be understood to mean matters in dispute under the contract." (*Wright, supra*, 525 U.S. at p. 80.) The Court held that the arbitration provision failed to meet the clear-and-unmistakable standard. (*Ibid*.) Similarly, *Vasquez* provided examples of "broad, general, unspecific arbitration clause[s]" that would be insufficient to constitute a clear and unmistakable waiver, such as "a clause requiring submission to

14

arbitration of "''all grievances or questions of interpretation arising under''" the collective bargaining agreement. [Citation.]" (*Vasquez, supra*, 80 Cal.App.4th at p. 436, fn. 4.) Article 12 is no more specific. It makes no mention of the California Labor Code or any other statute, it does not discuss individual statutory rights, nor does it mention waiver of a judicial forum. Article 12, standing alone, does not include a clear and unmistakable waiver of Vasserman's right to a judicial forum to bring statutory claims.

The Hospital argues that "specific Labor Code provisions that are to be arbitrated [do] not have to be contained in the arbitration provision." The Hospital cites *Vasquez*, which held that even where a waiver is not included in the arbitration clause specifically, "[a] waiver in a collective bargaining agreement may also be sufficiently clear if broad, nonspecific language in the arbitration clause is coupled with 'an "explicit incorporation of statutory antidiscrimination requirements" elsewhere in the contract. [Citation.] If another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement, employees will be bound to arbitrate their [state and federal statutory] claims.' [Citation.]" (*Vasquez, supra*, 80 Cal.App.4th at p. 435.)[5]

_____

[5] Division Seven of this court has characterized this language in *Vasquez* as an "alternative formulation of the collective bargaining agreement waiver test [that] has been widely followed in the Fourth Circuit but much less so in other jurisdictions." (*Mendez, supra,* 220 Cal.App.4th at p. 546.) We express no opinion on the general applicability of this version of the clear-and-unmistakable test. Here, we hold that even if this more permissive standard is applicable, the language of the CNA CBA does not meet it.

According to the Hospital, Article 14 (compensation) and Article 15 (meal and rest periods), read in conjunction with Article 12, constitute a clear and unmistakable waiver relating to the causes of action Vasserman asserts. Neither of these provisions, however, clearly states that a right to a judicial forum for alleged statutory violations has been waived.

Article 14 discusses overtime compensation, seniority pay, and shift differential pay. It does not mention California law or any other statutory requirements regarding worker pay. The Hospital argues that Vasserman's "wage claims are 'grievances' as defined within the CBAs" because they "require interpretation of whether any rounded time and purported off-the-clock work constitute 'any time worked' as that phrase is used within the CBAs such that they are compensable." Article 14 cannot reasonably be read to include a clear and unmistakable waiver of a judicial forum for statutory claims. To meet that standard, "[a]t a minimum, the agreement must specify the statutes for which claims of violation will be subject to arbitration." (*Mendez, supra*, 220 Cal.App.4th at p. 546.) Article 14 does not do so.

The Hospital argues that the "8 & 40 Overtime Plans" described in Article 14 mirror the requirements in Labor Code section 510, and that Labor Code section 514 allows exceptions for alternative workweeks. This argument ultimately may be a defense to Vasserman's claims, but it does not compel a conclusion that the CNA CBA includes a valid waiver. "[D]iscussing a topic while at the same time saying nothing about the statutory right at issue does not affect [sic] a clear and unmistakable waiver of that right." (*Choate, supra*, 215 Cal.App.4th at p. 1467.) Given the lack of any statutory citation in Article 14, along with the definition of a "grievance" in Article

16

12 that does not include any suggestion that Labor Code violations must be grieved and arbitrated, Articles 12 and 14 together cannot be read to constitute a clear and unmistakable waiver of a judicial forum for statutory rights.

The Hospital also argues that Article 15, regarding meals and rest periods, includes a clear and unmistakable waiver. Article 15, subparagraph (C), states, "A Nurse shall receive any and all penalties provided for under this Article, the Labor Code or the Wage Order no later than the pay period immediately following the day resulting in the penalties. If a Nurse fails to receive any penalty called for by this article, the Labor Code, or the Wage Order the Nurse may file a Grievance pursuant to Article 12. . . ." The Hospital argues, "The reference to Wage and Hour claims under the Labor Code or Wage Order is a sufficiently 'clear and unmistakable' agreement, as a matter of law, to arbitrate plaintiff's statutory meal and rest period claims."

An employer's agreement to pay a penalty required by law is not the same thing as a union's agreement to waive members' rights to a judicial forum for statutory violations. In *Vasquez*, for example, the plaintiff asserted claims under the Fair Employment and Housing Act (FEHA) and the federal Americans with Disabilities Act (ADA). The CBA stated that the parties made a commitment not to discriminate "under applicable federal and state law," and the defendant argued that this required the plaintiff to arbitrate his claims. (*Vasquez*, *supra*, 80 Cal.App.4th at p. 436.) The court stated that to meet the clear-and-unmistakable test, "[a] simple agreement not to engage in acts violative of a particular statute will not suffice; the agreement must establish the intent of the parties to incorporate 'in their entirety' the [relevant] statutes. [Citation.] Compliance with a

17

particular statute must be an express contractual commitment in the collective bargaining agreement.  [Citation.]" (*Vasquez, supra*, 80 Cal.App.4th at p. 435.)  The court held that the CBA did not meet that test:  "[T]here is a contractual commitment not to discriminate on the basis of national origin, but there is no express provision that the antidiscrimination commitment is subject to the grievance and arbitration provisions.  Nor are the ADA and the FEHA explicitly incorporated in the CBA. Indeed, these statutes are not even mentioned."  (*Id*. at p. 436.)

Similarly, in *Mendez, supra,* the plaintiff asserted causes of action under FEHA, and the defendant employer argued that the applicable CBA included a clear and unmistakable waiver.  The CBA stated that the employer had a policy of being in compliance with all applicable regulations, laws, and ordinances, and said that employees were to be treated with dignity at all times. (*Mendez, supra*, 220 Cal.App.4th at p. 545.)  The Court of Appeal held that "a collective bargaining agreement that contained a broad arbitration clause coupled with general language about complying with the law" was insufficient to pass the clear-and-unmistakable waiver test.  (*Id*. at p. 546.)  The court followed *Vasquez* and held that the CBA did not include a clear and unmistakable waiver.  (*Mendez, supra*, at p. 546.)

In *Wright*, the CBA stated that "[i]t is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." (*Wright, supra*, 525 U.S. at p. 81.)  The Court held that was not an incorporation of statutory requirements, because simply referencing compliance with statutes in a CBA "'is not the same as making compliance with the ADA a contractual commitment that would be subject to the arbitration clause.'"  (*Ibid*.)

18

Here, Article 15 states that the Hospital agrees to pay penalties required by the Labor Code, but it does not make compliance with the Labor Code an express contractual commitment. Indeed, it mentions the Labor Code only in relation to penalties; there is no incorporation of Labor Code provisions relevant to required meal and rest breaks. In addition, Article 15 states that if a nurse fails to receive a penalty, he or she may file a grievance as stated in Article 12. As discussed above, however, Article 12 limits arbitration to grievances that consist of disputes arising out of the CNA CBA, and it limits an arbitrator's power to that necessary to decide only issues that qualify as grievances. Rather than expressly incorporating Labor Code provisions, therefore, Article 15 impliedly excludes requirements not included in the CNA CBA itself.

The broad, nonspecific language in the CNA CBA arbitration clause is therefore not coupled with an explicit incorporation of statutory requirements in Articles 14 or 15 of the CBA. The CNA CBA did not include an expressly stated, clear and unmistakable waiver of the right to a judicial forum for individual statutory claims. The trial court properly denied the Hospital's motion to compel arbitration.

## DISPOSITION

The ruling on the motion to compel arbitration is affirmed. Vasserman is entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**

COLLINS, J.

We concur:

EPSTEIN, P. J.                                          MANELLA, J.

19