Filed 3/29/21  Zamora v. Overhill Farms CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| MARLEN A. BELTRAN ZAMORA,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>OVERHILL FARMS, INC.,<br><br>    Defendant and Appellant. | B302764<br><br>(Los Angeles County Super. Ct. No. 19STCV10854) |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Troutman Sanders, Mark J. Payne, Misha Tseytlin, for Defendant and Appellant.

Matern Law Group, Matthew J. Matern, Launa Adolph, Max Sloves, Shooka Dadashzadeh, for Plaintiff and Respondent.

_____

Defendant and appellant Overhill Farms, Inc. appeals from an order denying its motion to compel arbitration of claims brought by plaintiff and respondent Marlen A. Beltran Zamora.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Zamora was an Overhill employee and a member of the United Food and Commercial Workers, Local 770 (Union) between 2008 and 2019.  Zamora's employment was subject to two consecutive and substantially similar collective bargaining agreements between the Union and Overhill, the first running from 2014 to 2017 and the second from 2018 to 2021 (collectively the CBA).[1]

Article 8 of the CBA is titled "GRIEVANCE AND ARBITRATION PROCEDURE."  It defines the term "grievance" as "any dispute between [Overhill] and either [the] Union or any employee concerning the interpretation,

_____

[1] The relevant CBA with the Union covered the period from September 22, 2014, to September 22, 2017.  The subsequent CBA, which covered the period from September 1, 2018, to August 31, 2021, is the same in all material respects.

2

application, or enforcement of this Agreement."  Under the section heading "Arbitrability," the agreement states:  "The arbitration procedure herein provided shall extend only to those issues which are arbitrable under this Agreement.  In order for a grievance to be arbitrable . . . it must genuinely involve the interpretation, application, or enforcement of a specified provision or provisions of this Agreement; . . . it must not rest on any alleged understanding, practice, or other matter outside the scope of this Agreement; [and] it must not require the arbitrator, in order to rule in favor of the grievance, to exceed the scope of the arbitrator's jurisdiction under this Agreement . . . ."  Another section states "The arbitrator's jurisdiction to make an award shall be limited by the arbitration submission agreement, or as otherwise herein expressly provided, and confined to the interpretation, application, or enforcement of the provisions of this Agreement."

Article 10, titled "MANAGEMENT RIGHTS," specifies that except as limited by the CBA, Overhill retains the right to manage its business, including but not limited to "the right to hire and direct its employees, to determine the times and hours of operations, . . . to schedule and change working hours, shifts, and days off, . . . and to discipline, suspend, and terminate employees for just cause."

Articles 11 and 12, titled "HOURS OF WORK" and "OVERTIME," respectively, contain detailed provisions for hours of work, meal and rest breaks, and overtime. "Employees who claim they were not given the opportunity

3

to take the rest breaks or meal periods described [in the CBA] must notify the Employer in writing within two (2) business days and cannot file a grievance or make a claim of any kind if they have not done so." Overhill "will pay overtime premiums only as required by California and federal law." No specific statutes are identified, nor are any remedies for violations.

Article 15, titled "TOOLS AND EQUIPMENT," states that Overhill "shall supply all necessary tools, equipment, and supplies needed in the performance of work, including uniforms if required." In some circumstances, Overhill "shall reimburse Employees for the purchase of the required safety shoes . . . ." The article does not reference the grievance procedure or any statutes.

Article 30, titled "WAGES," includes a detailed description of wages, including wage premiums for specified departments, bonuses, and pay caps based on job classification. The article does not reference the grievance procedure or any statutes.

Article 31 is titled "COMPLIANCE WITH APPLICABLE LAWS" and states in its entirety, "The Company agrees to use its best efforts to comply fully with California law and United States immigration, social security, and income tax laws with respect to its Employees." Article 32, titled "COMPLETE AGREEMENT" states that the CBA "constitutes the complete, sole and entire agreement between the parties" and it can only be altered or amended by a signed, written agreement.

In March 2019, Zamora filed a class action against Overhill, alleging violations of the California Labor Code[2] and Industrial Welfare Commission Wage Order No. 5-2001, including meal and rest break violations, minimum wage and overtime violations, failure to pay all wages due, failure to provide accurate wage statements, and failure to reimburse business expenses.  Zamora also asserted a claim under the California Unfair Competition Law (UCL) and sought civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA).

Overhill removed the case to federal court, asserting preemption under section 301(a) of the Labor Management Relations Management Act[3] on the grounds that Zamora's claims required interpretation of the CBA.  On Zamora's motion, the federal court remanded Zamora's case to superior court, reasoning that her claims were grounded in application of state law, and that any interpretation of the CBA was merely incidental.

---

[2] All further statutory references are to the Labor Code, unless otherwise stated.

[3] "Title 29 United States Code section 185(a) codifies section 301(a) of the Labor Management Relations Act. (Pub.L. No. 101 (June 23, 1947) 61 Stat. 156.)  Courts typically refer to the statutory provisions at issue as 'section 301(a)' rather than by citation to the United States Code." (*Knutsson v. KTLA, LLC* (2014) 228 Cal.App.4th 1118, 1126.)

After the case returned to superior court, Overhill moved to compel arbitration, arguing the CBA required arbitration of Zamora's claims. The court denied Overhill's motion in an oral ruling after hearing. The court reasoned that while there is usually a presumption favoring arbitration, because the contract in question here is a CBA, the presumption does not apply to the alleged statutory violations. In these circumstances, a CBA would not be deemed to waive an employee's right to pursue statutory claims in a judicial forum unless that waiver is clear and unmistakable, as explained in *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70, 79 (*Wright*) and *Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, 244 (*Vasserman*). The trial court found no such clear and unmistakable waiver of plaintiff's statutory claims, and so denied Overhill's motion to compel arbitration.

Overhill filed a timely notice of appeal.

## DISCUSSION

### A. Governing Principles

"We review an order denying a petition to compel arbitration for abuse of discretion unless a pure question of law is presented, in which case we review the order de novo." (*Vasserman, supra*, 8 Cal.App.5th at p. 244.) "A petition to compel arbitration should be granted if the court determines

6

that an agreement to arbitrate the controversy exists. (Code Civ. Proc., § 1281.2.) Fundamental to this inquiry is whether the parties have agreed to arbitrate their dispute. (See *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233 [it is "overarching principle that arbitration is a matter of contract"]; [citations].)" (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 11 (*Cortez*).)

"A union representative may agree on an employee's behalf as part of the collective bargaining process to require the employee to arbitrate controversies relating to an interpretation or enforcement of a CBA. (*14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247, 256–257 (*Penn Plaza*) ["'arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself"]; *Wright*[, *supra*,] 525 U.S. [at p.] 79.) In fact, when a CBA includes an arbitration provision, *contractual matters* under a CBA are presumed arbitrable; that is, arbitration must be granted as long as the CBA is reasonably susceptible to an interpretation in favor of arbitration. (*Wright, supra*, 525 U.S. at pp. 78–79.)" (*Cortez, supra*, 15 Cal.App.5th at pp. 11–12, italics added.) "However, the presumption of arbitration in a CBA does not apply to statutory violations. (*Wright, supra*, 525 U.S. at pp. 78–79 . . . .) . . . [T]he United States Supreme Court has made clear that waiver of the right to prosecute a statutory violation in a judicial forum is only effective if it is explicit,

7

"'clear and unmistakable'" [citations.]" (*Cortez, supra*, 15 Cal.App.5th at p. 12.)

"[I]n determining whether there has been a sufficiently explicit waiver, courts look to the generality of the arbitration clause, explicit incorporation of statutory requirements, and the inclusion of specific contractual provisions." (*Vasserman, supra*, 8 Cal.App.5th at p. 246, citing *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434 (*Vasquez*).) A waiver in a CBA is sufficiently clear if it is found in an explicit arbitration clause. (*Carson v. Giant Food, Inc.* (4th Cir. 1999) 175 F.3d 325, 331.) "'"Under this approach, the [CBA] must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment." [Citation.]' [Citation.]" (*Vasserman, supra*, 8 Cal.App.5th at pp. 246–247.)

"A waiver in a [CBA] may also be sufficiently clear if broad, nonspecific language in the arbitration clause is coupled with 'an "explicit incorporation of statutory . . . requirements" elsewhere in the contract. [Citation.] If another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement, employees will be bound to arbitrate their [state and federal statutory] claims.' [Citation.]" (*Vasquez, supra*, 80 Cal.App.4th at p. 435, fn. omitted.)

## B. Clear and unmistakable standard applies to the pleaded statutory claims

Overhill urges this court to depart from established California appellate decisions and hold instead that the clear and unmistakable standard is limited to cases where a union employee seeks to pursue statutory discrimination claims in a judicial forum, and that for all other statutory claims, the CBA is subject to the usual liberal construction in favor of arbitration. Overhill emphasizes that the two key U.S. Supreme Court's decisions in this area, *Wright* and *Penn Plaza*, both involved statutory discrimination claims, and absent language expressly making the clear and unmistakable standard applicable to other, non-discrimination related statutory claims, such a broad interpretation is unwarranted. The plaintiffs in *Wright* and *Penn Plaza* did bring claims of statutory discrimination, and neither case involved statutory wage and hour, or other economic claims. (*Penn Plaza*, *supra*, 556 U.S. at pp. 253–254 [age discrimination]; *Wright*, *supra*, 525 U.S. at p. 75 [disability discrimination].) But we are not persuaded by Overhill's efforts to limit the requirement of a clear and unmistakable waiver solely to claims of statutory discrimination. Rather, we agree with and follow the approach taken by the California courts, requiring a CBA to include a clear and unmistakable agreement to waive the right to enforce other statutory protections—including those prohibiting the kinds of economic conduct alleged here—in a

9

judicial forum.[4]  (See, e.g., *Cortez*, *supra*, 15 Cal.App.5th at pp. 11–12 [waiver of the right to prosecute a statutory claim alleging wage and hour violations must be clear and unmistakable]; *Vasserman*, *supra*, 8 Cal.App.5th at p. 245 [claims alleging statutory violations relating to meal and rest breaks, unpaid wages, and unpaid overtime not subject to a presumption of arbitrability and waiver of right to pursue statutory claims in a judicial forum must be clear and unmistakable]; *Volpei v. County of Ventura* (2013) 221 Cal.App.4th 391, 394 [clear and unmistakable waiver required for statutory discrimination and retaliation claims]; *Choate v Celite Corp.* (2013) 215 Cal.App.4th 1460, 1465 (*Choate*) [a CBA "validly waives a union member's right to litigate federal or state claims (including for immediate payment upon termination for vested vacation time) in a judicial forum only if the waiver is clear and unmistakable"].)[5]

---

[4] The conclusion we reach does not disturb California law that "strongly favors" arbitration.  (*OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 125.)  In the collective bargaining context, frequently involving sophisticated, repeat players on both sides, the clear and unmistakable rule has no bias for or against arbitration; it merely sets the framework in which negotiations will proceed.

[5] Overhill's criticisms of *Vasquez* are not well taken, primarily because they are based on a misquoting and mischaracterization of the opinion's language.  In its appellant's opening brief, Overhill boldly asserts:  "This

## C. No clear and unmistakable waiver

Overhill contends that, even applying the clear and unmistakable waiver standard, arbitration is still required here because the CBA makes statutory compliance a contractual commitment subject to the arbitration clause.[6] Specifically, Overhill asserts that the CBA at issue includes

Court's mistaken path began with *Vasquez*, which was a discrimination case and should have been decided on that limited basis under *Wright* . . . . *Vasquez* began with its framing of the question at issue as 'whether a union can *waive* employees' rights to a judicial forum *for statutory claims.*' (*Vasquez, supra*, 80 Cal.App.4th at [p.] 432 [emphases added].)" The very basis for Overhill's argument (that our opinion in *Vasquez* should have limited itself to statutory discrimination claims, not all statutory claims) depends on an incorrect quote of the opinion. The correct language states: "The question presented is whether arbitration of these statutory discrimination claims is required under the CBA and, if so, whether a union may waive its members' rights to a judicial forum for statutory discrimination claims." (*Vasquez, supra*, 80 Cal.App.4th at p. 432.)

[6] Overhill concedes that it cannot meet one of the two alternative methods to establish statutory compliance as a contractual commitment; the CBA at issue does not contain a clear and unmistakable provision under which the employees agree to submit to arbitration all state and federal statutory causes of action arising out of their employment.

"broad, nonspecific language in the arbitration clause" that is "coupled with 'an "explicit incorporation of [relevant] statutory . . . requirements" elsewhere in the contract.' . . . [Citation.]" (*Vasquez, supra,* 80 Cal.App.4th at p. 435.)

The CBA at issue here, however, contains no express contractual commitment to comply with any particular statute, much less the specific statutes that Zamora invokes in her lawsuit. "A simple agreement not to engage in acts violative of a particular statute will not suffice; . . . [c]ompliance with a particular statute must be an express contractual commitment in the collective bargaining agreement." (*Vasquez, supra,* 80 Cal.App.4th at p. 435.) Articles 11 and 12 govern hours of work, meal and rest breaks, and overtime. Nowhere in those articles, or anywhere in the CBA, do we find any contractual commitment for compliance with a specific statute. Indeed, Overhill does not point to a single sentence in the CBA that obliges Overhill to comply with a particular California or federal statute. "[D]iscussing a topic while at the same time saying nothing about the statutory right at issue does not effect a clear and unmistakable waiver of that right." (*Choate, supra,* 215 Cal.App.4th at p. 1467.) Instead, Overhill points to descriptions given by the federal district court and Zamora herself to argue that the CBA incorporated the language of the Labor Code by reference. We need not concern ourselves with such extraneous evidence when the CBA contained an integration clause, and the express terms of the CBA do not meet the standard

12

articulated in *Vasquez.* (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23 [extrinsic evidence cannot be used to create or alter obligations under an integrated contract].) We therefore conclude that the CBA does not contain a clear and unmistakable waiver of the right to pursue statutory claims against Overhill in court.

## D. Zamora's overtime claims

Overhill contends that Zamora's overtime claims are not statutory claims, and therefore they are subject to arbitration. The third cause of action in Zamora's complaint alleges that Overhill failed to pay Zamora and class members overtime as required under section 510[7] and 1194. Overhill argues that the requirements of section 510 do not apply because Overhill meets the exemption criteria set forth in section 514. Section 514 provides that section 510 "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides

_____

[7] Section 510, subdivision (a) states the overtime pay requirements for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . ." in addition to other specified circumstances. Section 510, subdivision (a)(2) states "[t]he requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to . . . [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514."

13

for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and *a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.*" (Italics added.) According to Overhill, because the CBA identifies a "pay cap" (which we understand to mean a maximum hourly pay rate) for certain job classifications that is higher than state minimum wage for the time period covered by the first CBA (between 2014 and 2018), some employees would meet the criteria of section 514 and thus be exempt from the requirements of section 510. This argument suffers from one key flaw. Nowhere in its motion to compel arbitration does Overhill argue that Zamora was paid at least 30 percent more than minimum wage, or that section 514 precludes Zamora from pursuing a statutory overtime claim. Because a class has yet to be identified or certified, if there are employees who meet section 514 criteria they can be excluded from the definition of the class. Further, because Overhill did not present this argument to the trial court, and offers no explanation for the failure to do so, we deem the argument waived. ""Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]" [Citation.]" (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399.)

14

## E.  Unconscionability

Because we conclude that the court correctly denied Overhill's motion to compel arbitration, we need not consider whether the CBA was unconscionable.

## DISPOSITION

The trial court's November 14, 2019 order denying defendant and appellant Overhill Farms, Inc.'s motion to compel arbitration is affirmed.  Costs on appeal are awarded to plaintiff and respondent Marlen A. Beltran Zamora.



MOOR, J.

We concur:



BAKER, Acting P. J.



KIM, J.

15