Filed 12/20/24  Rodriguez v. D.H. Blattner & Sons CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NICHOLAS JOSEPH RODRIGUEZ, Plaintiff and Respondent, v. D.H. BLATTNER & SONS, LLC, Defendant and Appellant. | F087801 (Super. Ct. No. 23CECG04200) **OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

England, Ponticello & St. Clair and Barry W. Ponticello, Max B. Anikstein, and Ian D. Ross for Defendant and Appellant.

Lipeles Law Group, APC and Kevin A. Lipeles, Thomas H. Schelly, and Julian B. Bellenghi for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P. J., Peña, J. and Meehan, J.

Defendant and appellant D.H. Blattner & Sons, LLC (Blattner) appeals from an order denying its petition to compel arbitration against plaintiff and respondent Nicholas Joseph Rodriguez (Rodriguez) based on a collective bargaining agreement (CBA) entered between Blattner and Rodriguez's union. Blattner contends the CBA's arbitration provision waived Rodriguez's right to bring his causes of action, all premised upon discriminatory conduct in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), in a judicial forum. We affirm.

## BACKGROUND

**The Complaint**

On October 6, 2023, Rodriguez filed a complaint against Blattner. He alleged he began experiencing workplace harassment from his Blattner coworkers and supervisors in 2020, which led to job stress in 2021, and a temporary disability leave in June 2022. Though he requested accommodations and complained to his supervisor, no accommodations were made, and, in August 2022, Blattner fired him because "they had no more use for him at the company if he was unable to work."

Based on these allegations, Rodriguez brought six causes of action alleging discriminatory conduct in violation of FEHA, one cause of action for wrongful termination in violation of public policy, and one cause of action for unfair business practices. (Bus. & Prof. Code, § 17200 et seq.) The latter causes of action were based on the same conduct underlying Rodriguez's FEHA claims.

**Petition to Compel Arbitration**

On December 1, 2023, Blattner petitioned to compel arbitration. Blattner claimed that, because Blattner entered a project labor agreement (the agreement) with Rodriguez's union on February 15, 2022, Rodriguez, a contractor performing work on the project governed by the agreement, was compelled to arbitrate his claims.

The agreement provided in relevant part: "This Agreement covers all on site construction, alteration, demolition or repair of buildings, structures, and other works

2.

which are part of the Project.  All work covered by this Agreement is referred to as 'Covered Work.'  This Agreement also covers work done in temporary yards or facilities adjacent to or near the project that is otherwise Covered Work."

Another section of the agreement provided a four-step dispute resolution process, culminating in arbitration, of all "grievances," defined as " 'all questions arising out of and during the term of this Agreement involving its interpretation and application (other than successorship) ….' "

Blattner argued Rodriguez's claims constituted a "grievance" under the agreement, subjecting them to the dispute resolution process.

Rodriguez countered that his allegations in this lawsuit pertained to work on different projects for Blattner over multiple years prior to the agreement's signing, including the coworkers and supervisors on those *other* projects.  Because his lawsuit sought no damages for events occurring on the project specifically mentioned in the agreement, Rodriguez contended he did not agree, and Blattner could not compel him, to arbitrate his claims.

Rodriguez also noted the agreement's scope did not appear to cover employment-related disputes, only disputes arising from work related to the project.  The agreement stated that "the purpose of this Agreement [is] to ensure that a sufficient supply of skilled craft workers are available at the Project," and that it "covers all on-site construction, alteration, demolition, or repair of buildings, structures, and other works which are part of the Project."  (Italics omitted.)  Finally, Rodriguez argued the arbitration agreement was unconscionable and the costs of arbitration, as apportioned by the agreement, inequitable.

On March 4, 2024, after receiving oral argument, the trial court denied Blattner's petition.  The court explained that the agreement's arbitration provision did not cover Rodriguez's claims because it postdated the alleged harassment and discrimination, and

3.

the agreement's language narrowly related grievances to work performed on the project, not to the employment relationship broadly construed.

## DISCUSSION

With no evidentiary dispute, we review de novo whether Rodriguez must arbitrate his claims. (*State ex rel. Cisneros v. Alco Harvest, Inc.* (2023) 97 Cal.App.5th 456, 459 [de novo review appropriate where denial of petition to compel arbitration poses pure question of law].) We affirm the trial court's order for reasons different than those in the court's decision.

### A.     FEHA Causes of Action

The parties agree the agreement is a CBA and that Rodriguez is a labor union member subject to its terms. Given CBAs must clearly and unmistakably waive the judicial forum as to statutory antidiscrimination claims, like FEHA violations, and this CBA does not, Rodriguez's claims are nonarbitrable.

A party must consent to arbitrate a dispute, and, generally, the scope of that consent is determined by an interpretation of an arbitration provision under common principles of contract law. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; *Rymel v. Save Mart Supermarkets, Inc.* (2018) 30 Cal.App.5th 853, 859.)

The clear presumption in favor of arbitration under state and federal law (see *Rymel v. Save Mart Supermarkets, Inc.*, *supra*, 30 Cal.App.5th at p. 859) is inapplicable "to a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination." (*Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70, 80 (*Wright*); accord, *14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247, 258 (*14 Penn Plaza*); *Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 12 (*Cortez*).)

Because disputes involving statutory rights "ultimately concern[] not the application or interpretation of any CBA, but the meaning of a … statute" and are

4.

"distinct from any right conferred by" a CBA, we do not presume a CBA's arbitration provision covers a statutory right. (*Wright*, *supra*, 525 U.S. at pp. 78–79.)

Rather, a CBA must be "particularly clear," stating " ' "explicitly" ' " and " 'clearl[y] and unmistakabl[y]' " a waiver of the judicial forum as to statutory antidiscrimination claims. (*Wright*, *supra*, 525 U.S. at pp. 79–80; see *14 Penn Plaza*, *supra*, 556 U.S. at p. 258 ["[t]his Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the [CBA]"].)

California courts of appeal follow *Wright*'s "clear and unmistakable" standard. (*Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, 246–247 (V*asserman*); *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541, 543; *Hoover v. Am. Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1208 [statutory wage violations]; *Flores v. Axxis Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 806 [applying *Wright*'s clear and unmistakable standard to FEHA claims]; *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434 [same]; accord, *Cortez*, *supra*, 15 Cal.App.5th at pp. 12–13 [affirming *Wright*'s clear and unmistakable standard as applied to CBA disputes premised on statutory violations but distinguishing on grounds irrelevant here].) In California, a CBA *may* waive an employee's FEHA claims *only if* it clearly and unmistakably waives those rights.

"In determining whether there has been a sufficiently explicit waiver, the courts look to the generality of the arbitration clause, explicit incorporation of statutory antidiscrimination requirements, and the inclusion of specific antidiscrimination provisions. The test is whether a collective bargaining agreement makes compliance with the statute a contractual commitment subject to the arbitration clause." (*Vasquez v. Superior Court*, *supra*, 80 Cal.App.4th at p. 434; *Vasserman*, *supra*, 8 Cal.App.5th at p. 246 [quoting *Vasquez*]; accord, *Mendez v. Mid-Wilshire Health Care Center*, *supra*, 220 Cal.App.4th 534, 545.) To make a clear and unmistakable waiver, "[c]ompliance

5.

with a particular statute must be an express contractual commitment in the collective bargaining agreement." (*Vasquez*, at p. 435.)

Blattner concedes that the CBA's arbitration provision "neither expressly reference[s] nor fully incorporate[s]" FEHA or the Government Code. But Blattner argues that the grievance provision—" 'any question arising out of and during the term of this Agreement involving its interpretation and application (other than successorship)' "—"is sufficiently expansive so as to 'clearly and unmistakably' encompass [Rodriguez's] statutory claims." But an "expansive" grievance provision without *any* statutory reference or language analogous to FEHA's language is not clear and unmistakable. Nothing obliges Blattner to comply with FEHA or any other antidiscrimination statute. The closest promise we find in the CBA, "to establish adequate and fair wage levels and working conditions," is nonspecific and does not incorporate any statutory antidiscrimination requirements.

Because the CBA does not clearly and unmistakably waive Rodriguez's right to the judicial forum for his FEHA claims (his first six causes of action), Rodriguez has not agreed to arbitrate them.

### 1. *Blattner's Counterarguments*

First, Blattner contends the clear and unmistakable standard is inapplicable to this case because the arbitrability disputes in *Vasserman* and *Wright* arose only under section 301 of the Labor Management Relations Act (section 301), irrelevant here. (29 U.S.C. § 185(a).)[1]

---

[1] Section 301 provides in relevant part, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (29 U.S.C. § 185, subd. (a).)

But section 301 is about federal preemption of disputes over the interpretation of a CBA. *Vasserman* did not, as Blattner contends, "address[] whether an employer could enforce arbitration of an employee's state statutory claims under [section] 301 …." Rather, *Vasserman* determined it need not look to the Labor Management Relations Act because " 'a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering [section] 301 preemption.' " (*Vasserman*, *supra*, 8 Cal.App.5th at p. 244, fn. 3.) Similarly, *Wright* rejected the normal presumption of arbitrability under section 301 because the dispute in *Wright* "concern[ed] not the application or interpretation of any CBA, but the meaning of [the Americans with Disabilities Act]." (*Wright*, *supra*, 525 U.S. at pp. 78–79.)

Both *Wright* and *Vasserman* found section 301 inapplicable, not foundational, to the determination of whether a CBA clearly and explicitly waives a statutory antidiscrimination right. Blattner fails to convince us the clear and unmistakable standard is inapplicable to this case.

Next, Blattner posits an artificial distinction between *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83 and *Wright*/*14 Penn Plaza* (and California decisions adopting these cases). Blattner appears to argue that *Armendariz* sets a standard separate from *Wright*/*14 Penn Plaza*'s clear and unmistakable standard.

But *Armendariz* did *not* hold that, *in the collective bargaining context*, FEHA claims are not subject to *Wright*'s clear and unmistakable standard. *Armendariz* dealt with an employment application, not a CBA. (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at pp. 91–92.) *Armendariz*'s analysis cited, with approval, federal caselaw (such as *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20; *Alexander v. Gardner-Denver* (1974) 415 U.S. 36; *Cole v. Burns Internat. Security Services* (D.C. Cir. 1997) 105 F.3d 1465) acknowledging, in *Gilmer*'s words, " '[a]n important concern [for] the tension between collective representation and individual statutory rights' that *was not present* outside the collective bargaining context."

7.

(*Armendariz*, at pp. 96, 101, italics added.) *Armendariz* did not disagree with Supreme Court precedent *within* the CBA context; it only dealt with a *private* arbitration agreement. We find *Armendariz* inapplicable to the analysis of whether the CBA waived Rodriguez's right to bring his FEHA claims in a judicial forum.

We also find Blattner's analysis of *14 Penn Plaza*, *supra*, 556 U.S. 247 unpersuasive. Blattner argues *14 Penn Plaza* departs from certain critical policy views of arbitration in *Gilmer* and *Gardner-Denver*. Though true, *14 Penn Plaza* reaffirmed *Wright*'s clear and unmistakable standard as applied to CBA disputes over violations of the federal Age Discrimination in Employment Act of 1967. (See *14 Penn Plaza*, at pp. 258–259.) Blattner errs in applying *14 Penn Plaza*'s criticism of *Gardner-Denver* and its progeny, which narrowly considered, irrelevant here, " 'the quite different issue whether arbitration of contract-based claims precluded *subsequent* judicial resolution of statutory claims' " and not, relevant here, " 'the issue of the enforceability of an agreement to arbitrate statutory claims.' " (*14 Penn Plaza*, at p. 264, italics added.) Blattner's focus on the *Gardner-Denver* line of cases is irrelevant to our discussion.

Rodriguez's first six causes of action are nonarbitrable under the CBA.

## B. Remaining Causes of Action

Blattner argues that, even if Rodriguez's first six causes of action are nonarbitrable under the CBA, his seventh cause of action for wrongful termination in violation of public policy and his eighth cause of action for unfair business practices are arbitrable.[2] We disagree.

---

[2] Blattner confusingly relies on *Chmiel v. Beverly Wilshire Hotel Co.* (1989) 873 F.2d 1283 in support of its argument. This case is clearly inapplicable. *Chmiel* dealt only with the propriety of an order denying the plaintiff's motion to remand and, specifically, whether certain causes of action were preempted by section 301 as involving the interpretation and application of a CBA. (*Id*. at pp. 1285–1287.) *Chmiel* does not deal with the severance of arbitrable and nonarbitrable claims or the arbitrability of statutory antidiscrimination claims. It is inapplicable and irrelevant to this case.

First, with respect to Rodriguez's eighth cause of action, in *Cortez*, *supra*, 15 Cal.App.5th at pp. 13–15, the court found some of an employee's causes of action arbitrable under a CBA. Because the employee's unfair competition claim derived from a nonarbitrable dispute under the CBA, it was not arbitrable. (*Id*. at p. 15 [unfair competition claims may derive from other violations of state or federal law]; Bus. & Prof. Code, § 17200.)

Here, Rodriguez's unfair competition claim derives from Blattner's alleged FEHA violations. Though this cause of action mentions the "prompt payment of overtime," the complaint alleges nothing about the failure to pay overtime, nor that the failure to pay overtime occurred after the CBA was signed. Given resolution of Rodriguez's unfair competition claim requires adjudication of the alleged FEHA violations, it is not subject to the CBA's arbitration provision. His unyielded right to bring his FEHA claims in court applies to this cause of action because it derives from the same alleged conduct undergirding Blattner's purported FEHA violations.[3]

Second, we determine this reasoning applies with equal force and effect to Rodriguez's seventh cause of action. The tort of wrongful termination in violation of public policy has, among its elements, the requirement that " 'the termination was substantially motivated by a violation of public policy ….' " (*Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 973.) "FEHA's provisions may provide the policy basis for a common law tort claim for wrongful termination in violation of public policy …." (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1383.) Where that occurs, the " 'tort claim is tethered to the meaning of the FEHA.' " (*Ibid*.) The court thus "look[s] to the substantive provisions regarding the nature and scope of FEHA's prohibition against disability discrimination in

---

[3]     Given we decide this case for reasons independent from those in the trial court's decision, we need not address Blattner's other arguments regarding purported errors in the court's decision.

9.

determining the nature and scope of a viable common law tort cause of action for wrongful termination in violation of FEHA's policy against disability discrimination." (*Ibid*.)

Here, Rodriguez's complaint cites only Blattner's alleged termination due to his disability as violating "the public policy expressed in California law, including but not limited to *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167." *Tameny* only dealt with an employee's termination for refusing to engage in a price fixing scheme illegal under the penal law. (*Id*. at p. 176; see *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 23–24 [summarizing *Tameny*].) Subsequent California Supreme Court decisions clarified that an action for common law wrongful termination in violation of public policy must "be tethered to fundamental policies delineated in a statutory or constitutional provision." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 74.)

The only reasonable reading of Rodriguez's seventh cause of action is that it is tethered to Blattner's alleged FEHA violations. It operates the same way as Rodriguez's unfair competition claim: deriving the alleged substantive "bad conduct" from, in this case, alleged FEHA violations. Though it is a non-statutory cause of action, it nevertheless is functionally equivalent to a statutory FEHA claim, falling outside the CBA's ambit.

## DISPOSITION

The order denying appellant's petition to compel arbitration is affirmed. Respondent shall recover costs on appeal.